MALVINA LAWSON and MARY L. BIRCKHEAD, appellants,

*v.*

WILLIAM C. NICHOLSON et al., respondents.

1. The mere possession of a bond and mortgage by a person not the obligee will not warrant the payment thereof to such possessor.

2. A scrivener, under a special authority for that purpose, received payment of interest on a bond and mortgage; afterwards, the obligee delivered the bond and mortgage, with other papers, wrapped up in paper, which was tied and sealed, to the scrivener for safe keeping; the scrivener surreptitiously broke open the bundle of papers and abstracted therefrom the bond and mortgage, and received payment of the principal due thereon, and then absconded. —*Held*, that such payment was invalid.

On appeal from a decree advised by Vice-Chancellor Green, whose opinion is reported in *Lawson* v. *Carson, 5 Dick. Ch. Rep. 370.*

Messrs. *Bergen & Bergen* and *Mr. John B. Uhle* (of the Philadelphia bar), for the appellants.

*Mr. Peter L. Voorhees,* for the respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

The essential facts of this case may be thus summarized :

On December 22d, 1858, Samuel A. Cook and John A. Cook,. having fallen in debt to Mary L. Lawson, who is now Mary L. Birckhead, one of the appellants, in the sum of $3,000, delivered: to her their bond of that date, running for a year, the interest being payable semi-annually. The bond was secured by a mort-. gage on property in the county of Camden. These instruments. were drawn by one Charles Leslie, a scrivener, resident in Philadelphia. Immediately upon their execution they were delivered to Miss Malvina Lawson, who retained them in her own possession until they were put in the custody of the above-mentioned Charles Leslie, at the time and in the manner hereafter stated..

On December 12th, 1866, the title to the mortgaged premises. became duly vested, by conveyance, in one Mary Carson, who, on December 14th, 1872, transferred, under the laws of this. state, for the benefit of her creditors, among other property, the said premises, to Isaac Carson, her assignee. About three months after—that is, on March 20th, 1873—Carson, the assignee, sold and conveyed the mortgaged lands to one Nicholson, for the sum of $4,545.96, the assignee undertaking· to clear off the existing mortgage of $3,000. With this view, and finding this latter bond and mortgage in the possession of the scrivener, Leslie, he paid the money secured by them to· him, the scrivener, and had the encumbrance canceled on the· record.

Shortly after this transaction the scrivener absconded with the money, so that the question whether the payment and can-- cellation of the appellant's mortgage were legal is of essential. importance, and is the only point *sub judice.*

It is obvious that in this inquiry the problem to be solved is, was Leslie, the scrivener, the agent of the appellant in the affair· in question?

Lawson v. Nicholson.

It is not, and cannot be, pretended that he was such in point of fact; the evidence is undisputed that Miss Lawson, now Mrs. Birckhead, the appellant, never had the intention, and never did, by expression, confer such authority upon him. If the agency claimed existed it must have been by imputation of law from the circumstances incident to the transaction. It is a case ever regulated, and regulated wholly, by the doctrine of estoppel, for the question always in such investigations is, has the obligee acted in such a way as to lead the obligor, or his representative, reasonably to the conclusion that the alleged agent had the right to receive payment of the obligation. It is deemed that it is at all times to be regarded as a fact, to be ascertained by a construction of the given circumstances, and not, as seems to be indicated in some of the authorities, as a thing to be regulated, in some instances, by legal definitions. It is a matter of fact to be interpreted by such rules as are applied in other cases of the same class.

The inquiry then is, was the assignee, Carson, justified in concluding, from the facts before him, that Leslie, the scrivener, was the agent of the mortgagee, with ·authority to receive payment of the moneys secured?

In looking through the facts in proof, but a single circumstance has been observed having a tendency to render reasonable, in any degree whatever, an affirmative reply to this interrogatory. That fact is, that at the time of the satisfaction of the bond and mortgage Carson found them in the hands of the scrivener. This was the sole circumstance that could, in the slightest manner, have affected his conduct. As to the incident that these securities had been originally, many years before, drawn by the scrivener, it is not anywhere intimated that the respondent had any knowledge of the subject. These documents, as has been stated, were, as soon as they had been executed, taken by the mortgagee into his possession; and there was no ground for any supposition that they had ever been under the control of the scrivener until the occasion on which he had produced them for payment. It is true that both Miss Carson and her trustee had paid interest on the bond, but such payments had been made,

not by reason of the bond or its accompanying mortgage being in charge of the scrivener, but in pursuance of an express direction to that effect. The appellant authorized Miss Carson and her assignee to pay the *interest* on these securities, and such an authorization repels, in its very tenor, the supposition that the principal moneys could be passed to the agent so designated.

In conformity to the agency thus limited, the interest on the $3,000 was, as it grew due, paid to the scrivener in the first place by Miss Carson and subsequently by her assignee, but on such occasions neither the bond nor mortgage was produced, nor did either of these persons have any ground to suppose that such securities were in charge or under the control of the agent receiving such interest.

It follows, therefore, as Carson, the assignee, at the time he attempted to take up the bond and mortgage in question, had no knowledge that those instruments had been drawn by the scrivener to whom he made payment, and that he had paid interest under a special authority so to do, that the only basis of his conduct was the fact that he found the securities in the possession of the person with whom he dealt. That a person in possession of a bond is thereby shown to have the right to receive the moneys it calls for, is a doctrine that has neither decision nor *dictum* for its sanction. If such a doctrine prevailed, it would deprive investments in such securities of much of their supposed safety. Such, fortunately, is not the law. Therefore, in the present case, if these securities had been confided to this man Leslie in such form that, without any misconduct on his part, it would have been in his power to manifest his possession of them, such unconditioned fact would have offered not the least ground for the inference of an agency to cancel them on the receipt of the moneys due. The present decree could not stand in the presence of such a showing as this. Much less can it be supported when the important fact is added that the securities were not entrusted to Leslie with the right to exhibit them in the way supposed. They came to him in this wise: He having offered to put all the valuable papers of the appellant in his fire-proof, accordingly they were put up by her

"at her own house in a bundle, covered with strong, grey paper, tied with strings crossed and recrossed, and sealed with sealing wax. It was a large bundle, more than two feet square." It was by breaking into this bundle and by criminally abstracting the securities in question that Leslie got them into his hands. Under these circumstances the moneys were paid upon them by Carson without a question.

For this court to validate such a payment would be to establish a rule in view of which it would not be prudent for a man to make any person the custodian of his documents of this kind, or to permit them to pass out of his own sight.

Let the decree be reversed, and a new one entered reviving and reinstating said bond and mortgage.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, LIPPINCOTT, MAGIE, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SIMS, SMITH—11.

*For affirmance*—REED—1.